**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DONALD R. PEVIA,                                    *

Plaintiff,                                          *

v.                                                  *          Civil Action No. ELH-21-751

DR. ASRESAHEGN GETACHEW, *et al.*,                  *

Defendants.                                         *
                                                  ***

**<u>MEMORANDUM OPINION</u>**

Donald R. Pevia, the self-represented plaintiff, filed suit against multiple defendants, pursuant to 42 U.S.C. § 1983.  ECF 1 (Complaint)[1]; ECF 8 (Supplement). The defendants include Dr. Asresahegn Getachew, Dr. Mandip Bartels, Holly Hoover, Dr. Vivien Dorsey (collectively, the "Medical Defendants"), as well as Wayne Hill, Commissioner of Correction, and Acting Warden Richard Roderick (collectively, the "Correctional Defendants).[2]  Pevia alleges that defendants acted with deliberate indifference to his serious medical needs by: (1) denying him a CAT scan of his brain, as recommended by his family neurologist; (2) denying him shoulder joint replacement surgery, recommended by an orthopedist, Dr. Roy Carls; and (3) improperly handcuffing him behind his back, in violation of a court settlement agreement mandating that he be cuffed in front. ECF 1 at 1-2, 6-7.

Defendants Getachew, Bartels, and Hoover moved to dismiss or, in the alternative, for summary judgment (ECF 10), supported by a memorandum (ECF 11) and exhibits, including

---

[1] ECF 1 is actually titled "Request To Order To Show Cause."  It has been construed as a Complaint.

[2] The Clerk shall amend the docket to reflect the correct names of the various defendants.

declarations from the defendants and portions of plaintiff's medical records.  Thereafter, plaintiff

sought discovery and to amend the Complaint to add Dr. Dorsey as a defendant. ECF 15; ECF 16.

By Memorandum and Order of December 15, 2021, I denied the dispositive motion without

prejudice; granted plaintiff's request for discovery, directing defendants to provide plaintiff with

a copy of his full medical record; and allowed plaintiff to add Dr. Dorsey as a defendant. ECF 24;

ECF 25.  However, I denied plaintiff's request to add Assistant Attorney General Stephanie Lane-

Weber as a defendant.[3]

Thereafter, the Medical Defendants filed a renewed motion to dismiss or, in the alternative,

for summary judgment (ECF 30), supported by a memorandum (ECF 30-1) (collectively, "Medical

Defendants' Motion").  The exhibits include declarations from each of the individual medical

defendants (ECF 30-2, ECF 30-3, ECF 30-4, and ECF 30-5) and plaintiff's medical records.  ECF

30-6; ECF 32.  The Correctional Defendants have also moved to dismiss or for summary judgment

(ECF 34), supported by a memorandum (ECF 34-1) (collectively, the "State Motion").

Pevia was notified of his right to respond to the motions (ECF 31 and ECF 35) and has

done so.  ECF 37, ECF 38, and ECF 40.[4]  The Medical Defendants have replied. ECF 39.

The motions are ripe for review and no hearing is needed to resolve them.  *See* Local Rule

105.6.  For the reasons discussed below, I shall deny the motions.

---

[3] The Court notes that Ms. Lane-Weber is now retired.  She previously served as counsel
for the State in many cases involving Maryland prisoners, including Mr. Pevia.

[4] The Correctional Defendants' Motion for Extension of Time to respond to the Complaint
(ECF 33) is granted nunc pro tunc.  ECF 38 is docketed as "Motion To Amend To Attached
Argument And Exhibits".  I shall grant the motion and construe it as a supplement to Pevia's
response in opposition to the Medical Defendants' Motion.

## I.     Background

### A.  Plaintiff's Allegations

At all times relevant to the Complaint, Pevia was confined at North Branch Correctional Institution ("NBCI"). ECF 1.  He raises several claims regarding the adequacy of his medical care.

Pevia states that Dr. Roy Carls evaluated him and recommended that he undergo surgery on his shoulder for a "joint replacement." ECF 1 at 1, 2. Without the joint replacement, Pevia states, he is in "constant pain." *Id*. at 2.

Plaintiff also states that in August 2019, he "provided Holly Hoover, RNP" with a copy of the recommendation of his mother's brain surgeon, urging that Pevia receive "a CAT scan for a possible aneurysm due to" his family history.  *Id.*  The recommendation was made because plaintiff's mother and sister were both diagnosed with aneurysms and the condition may be "hereditary."  *Id.* Plaintiff believes he is at a risk of death, without the diagnostic testing, because he could suffer a ruptured aneurysm at any time. *Id*. at 2.

Pevia also explains that as a result of a prior civil suit that he filed in this court in 2015, he reached a settlement agreement with the State that prohibits him from being handcuffed behind his back.  ECF 1 at 6. On an unspecified date, Hoover advised plaintiff that "'Adam Simons and Stephanie Lane-Weber are not qualified to dictate if plaintiff needed to be front cuff[ed] and she don't know how the plaintiff obtained it in the first place.'" *Id*. Additionally, Hoover allegedly advised unidentified correctional staff: "'Per medical, Pevia's no longer deemed medically cleared to be front cuff[ed].'" *Id*.  Pevia was escorted back to his cell and a notice was put on his door that he no longer required front cuffing.  *Id*.  Later that day, Pevia was handcuffed from behind by unidentified staff, which caused him great pain.  *Id.* at 7.  He thought his "arm was being ripped

out of his socket." *Id.*  Another officer investigated the matter and reinstated the order for front cuffing. *Id*.

According to plaintiff, in April 2020 he entered a "new settlement with the State." *Id.*  It provided, among other things, that within 30 days of the date of the agreement, plaintiff would be evaluated by a specialist. *Id.*  On an unspecified date, plaintiff was evaluated by Dr. Roy Carls, an orthopedist, who had previously treated plaintiff's shoulder and knee. *Id.* Plaintiff reports that in 2017, Dr. Carls advised him that he needed a shoulder replacement. *Id*. at 7.

On August 3, 2020, Hoover told plaintiff that Drs. Getachew and Bartel denied both a shoulder replacement and a CAT scan to determine whether plaintiff has an aneurysm. *Id*. at 1. Hoover stated she was going to call Dr. Carls and ask why he requested a joint replacement. *Id* at 7.  She also stated that "'they'" did not have to "abide by those settlements."  *Id.*

In Pevia's supplement to the Complaint (ECF 8), he states that Commissioner Hill has "overall control" over the Department of Public Safety and Correctional Services ("DPSCS"), and Warden Roderick has "control" over NBCI.  *Id.* at 1.  He claims that Roderick was "personally responsible" for plaintiff's welfare and health.  *Id.*  Plaintiff also contends that defendants failed to take any action to enforce the terms of the settlement agreement. *Id*. at 2.

### B.  Judicial Notice

The Court may take judicial notice of its own docket.  *See* F.R.E. 201; *see also Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990).  Of relevance here, plaintiff has previously filed several suits in this Court in connection with his need for front handcuffing.

In 2013, in the case of *Pevia v. Shearin*, ELH-13-3083, Pevia claimed that he sustained a shoulder injury due to improper handcuffing. The Court appointed pro bono counsel for Pevia (*id.*, ECF 39) and the case settled. *Id.*, ECF 50.

Thereafter, in 2017, Pevia filed two additional suits, each raising identical claims but against different defendants. *See Pevia v. Saville*, Civil Action ELH-17-2319; *Pevia v. Bishop, et al.*, ELH-17-2322. I consolidated those cases and, in a combined Memorandum Opinion and Order of June 22, 2018, both cases were dismissed, without prejudice, because plaintiff had failed to exhaust administrative remedies. *See Pevia v. Saville*, ELH-17-2319, ECF 29; ECF 30; *Pevia v. Bishop, et al.*, ELH-17-2322, ECF 27; ECF 28.

Pevia subsequently completed the administrative process and then filed *Pevia v. Bishop*, ELH-18-2176, largely alleging the same facts as detailed in *Pevia v. Saville*, Civil Action ELH-17-2319, and *Pevia v. Bishop, et al.*, ELH-17-2322. The court denied summary judgment, appointed pro bono counsel for Pevia (ECF 22, ECF 23, ECF 27), and the case settled. *Id.* ECF 41. It appears to be this settlement that Pevia claims was breached.  However, the parties have not provided the court with a copy of any settlement agreement.

### C. Defendants' Response

Dr. Getachew, a medical doctor employed by Corizon Health, Inc. ("Corizon"), is the Regional Medical Director ("RMD") for the Western Maryland Region of the Maryland Division of Correction. ECF 30-2 (Getachew Decl.) at 1, ¶ 2. He sees patients from NBCI through telemedicine. *Id*.  Dr. Getachew avers that he provided medical care to Pevia and is generally familiar with his care. *Id.*  In addition, Dr. Getachew reviewed Pevia's medical records.  *Id.* ¶ 3. They are docketed at ECF 32 and exceed 400 pages.

As the RMD, Dr. Getachew does not approve or deny consultation requests.  ECF 30-2, ¶ 5. Rather, he explains that consultation requests are submitted to the Utilization Management ("UM") team and they decide whether the requested procedure is medically necessary. *Id*. If the information submitted is not sufficient for a determination to be made, the UM team will request

additional information from the facility. ECF 30-2, ¶ 5. If the team determines that a procedure is not medically necessary the UM physician will issue an Alternative Treatment Plan ("ATP"). *Id.*

Vivien Dorsey, M.D., a board certified internist, avers that she is a licensed medical doctor since 1994. ECF 30-5 (Dorsey Decl.), ¶ 2. Since January 2019, she has been employed by Corizon as the Utilization Management Medical Director ("UMMD") in Maryland. ECF 30-5, ¶ 2. Dr. Dorsey explains that inmate treatment plans are created by onsite physicians, then sent to UM, where the plan is either approved or an ATP is proposed. The onsite providers can accept the UM recommendation or appeal the decision to the panel. *Id.* ¶ 4.

Further, Dr. Dorsey explains that she does not treat patients. *Id.* ¶ 5. Rather, she reviews consultation requests submitted by onsite care providers. *Id.* The requests are submitted through an electronic system called CARES but, as a reviewer, Dr. Dorsey does not have access to a patient's medical record because it is not included in CARES. *Id.* She is only able to review the records that the facility provider submits with the request. *Id.* As such, Dr. Dorsey has not reviewed plaintiff's entire medical record. *Id.*

Plaintiff saw Brenda Reese, RN, for sick call on November 6, 2018. ECF 32-7 (Medical Records) at 12-13. Plaintiff advised Reese that his mother and sister had been diagnosed with aneurysms in the past year and that his "doctor on the outside" wanted him to have a CT scan. *Id.* Reese advised that there was "no clinical indication to refer him to a provider. . . ." *Id.*

On March 6, 2019, Dr. Getachew saw Pevia for a chronic care visit, via telemedicine, for his hypertension and Hepatitis C ("HCV"). ECF 30-2 (Getachew Decl.), ¶ 6; ECF 32-7 at 17-19. At that time, plaintiff's blood pressure was controlled and he had no chest pain, shortness of breath, headache, or leg swelling. ECF 30-2, ¶ 6; ECF 32-7 at 17-18. Dr. Getachew renewed plaintiff's HCV medication and noted Pevia had completed his treatment for hepatitis and had an

undetectable viral load.  ECF 30-2, ¶ 6; ECF 32-7 at 17-18.  Pevia did not mention shoulder pain or request brain imaging during the visit. Nor did he mention anything to Dr. Getachew about his family neurosurgeon recommending an evaluation for an aneurysm. ECF 30-2, ¶ 6; ECF  32-1 at 15.

Plaintiff was seen by Nurse Practitioner Katrina Opel on September 17, 2019.  ECF 32-7 at 29-30.  Opel reported that plaintiff advised that his mother and sister were both diagnosed with cerebral aneurysms, which required surgical removal. *Id*.  Plaintiff stated that in light of the strong family history of aneurysms, Dr. Ashley, a neurosurgeon, recommended family screening. *Id*. Plaintiff voiced his concern about the risks associated with a cerebral aneurysm and asked to have the screening conducted, as recommended by his family's neurosurgeon. *Id*. That same day, Opel requested a Magnetic Resonance Angiography ("MRA").[5] *Id*. at 26-27; ECF 32-12 at 12-15.

Dr. Duggirala, the UM physician, asked to review the neurosurgeon's recommendations. ECF 32-12 at 12.  There were allegedly no neurosurgery notes in the record.  So, on February 27, 2020, Dr. Duggirala submitted an ATP stating:  "Based on the information provided, medical necessity not demonstrated at this time. Consider obtaining outside record or letter from family neurologist for review." *Id*.

Dr. Getachew accepted the ATP on March 10, 2020, and wrote to have plaintiff return for follow-up so he could be advised that the UM team "need[ed] letter from his family neurosurgeon stating that the patient needs screening for cerebral . . . ." *Id*. at 11.  He avers that he did not deny the request for a brain scan, but agreed with the UM team that plaintiff must provide the neurosurgeon's recommendation so that the claim of family history can be verified. ECF 30-2, ¶ 9

---

[5]        MRAs look specifically at the body's blood vessels. https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/magnetic-resonance-angiography-mra (last visited Jun 21, 2022).

Holly Hoover is a Certified Registered Nurse Practitioner ("CRNP") employed by Corizon at NBCI.  ECF 30-4 (Hoover Decl.) ¶ 2.  She avers that plaintiff never gave her a copy of the recommendation from his family's brain surgeon regarding a CAT scan.  ECF 30-4, ¶ 5.[6]  Hoover states that she checked Pevia's medical records and the recommendation is not there. *Id*. Dr. Getachew and Hoover explain that if plaintiff provides the letter, another request will be submitted to the UM team for approval. ECF 30-2 at 4, ¶ 9; ECF 30-4 at 2, ¶ 5.

On March 25, 2020, Hoover wrote a medical alert stating that front cuffing of plaintiff was not clinically indicated.  ECF 32 at 28; ECF 32-8 at 14; ECF 30-4 at 6, ¶ 17. Two days later, plaintiff submitted a sick call slip, asserting that he needed to be seen regarding his shoulder and stating that being stretched behind his back caused him pain. ECF 32-1 at 6.  A note on the sick call slip under "Response To Inmate/Detainee," apparently written by "April," states: "Must be examined by an orthopedic surgeon prior to being placed on front cuffing order." *Id.*

Hoover evaluated plaintiff that day. *Id*. at 7-8. He was 39 years of age at the time. *Id.* at 7. She noted that plaintiff had undergone arthroscopic decompression of the left shoulder in March 2016 and reported that he had a court order for front cuffing only. *Id.*  Further, she said that, pursuant to that order, Pevia was to be examined by an orthopedist to determine whether the front cuffing order needed to be continued. *Id.*

According to Hoover, plaintiff was able to complete all activities of daily living and exercise. *Id*. Plaintiff agreed that he was able to complete all the tasks that Hoover listed. Nevertheless, he stated that he had a court order for front cuffing. *Id*. Hoover claimed that front cuffing was not medically indicated and should be at the discretion of custody staff, but that

---

[6]  Plaintiff refutes this assertion, claiming that he gave both Hoover and Opel a copy of the letter from the family neurosurgeon, recommending the scan.  ECF 40 at 3.

custody staff would continue to handcuff plaintiff in the front until he is evaluated by an orthopedist.  ECF 32-1 at 7.

Hoover submitted a consultation request on March 27, 2020, for plaintiff to be seen by Dr. Carls, an orthopedist.  ECF 32-8 at 16-17; ECF 32-12 at 17. Dr. Bartels, a physician employed by Corizon as Utilization Management Medical Director, explains that as UMMD he reviews consultation requests submitted by various sites. ECF 30-3 (Bartels Decl.), ¶2. The UM team "ensures that there is sufficient medical evidence to find that the requested procedure or appointment is medically necessary." *Id*.  Although Dr. Bartels has never met or examined plaintiff, he has reviewed consultation requests regarding plaintiff's care. *Id*.

On March 30, 2020, Dr. Bartels denied Hoover's request for plaintiff to be seen by Dr. Carls.  He issued an ATP that stated:  "Based on the information provided, medical necessity not demonstrated at this time. Please discuss with RMD. The necessity for orthopedic referral is not met with normal examination."  ECF 32-12 at 17. Dr. Bartels explains that, based on his review of Hoover's note, indicating that she observed that plaintiff was able to complete his activities of daily living and play basketball, there was no indication that plaintiff had any serious medical need regarding his shoulder.  ECF 30-3 at 3, ¶ 7.  Dr. Bartels had no further role in plaintiff's care and had no involvement in decisions regarding shoulder surgery or the scan of Pevia's head. ECF 30-3 at 3, ¶¶ 5, 8.

Hoover responded to UMMD on April 7, 2020, stating: "I understand the patient has a normal assessment. However, per the court order the patient is to see an orthopedic [specialist] regarding his shoulder pain."  ECF 32-12 at 17.  On April 9, 2020, Dr. Getachew accepted the ATP and directed that a copy of the court order be submitted to the UM team if available. *Id*. at 16.  On April 20, 2020, the court order was submitted and on April 23, 2020, the ATP was overridden and

the orthopedic consultation was approved. *Id.* at 16. Dr. Getachew explains that although he did not deny the request for plaintiff to be evaluated by Dr. Carls, he agreed that the visit was not needed based on Hoover's clinical findings. ECF 30-2, ¶ 14.

Plaintiff had left shoulder x-rays taken on June 15, 2020.  ECF 32-11 at 8.  The x-rays indicated that plaintiff had an old injury to the humeral head and glenohumeral joint with mild deformity.  *Id.*  "No acute osseous abnormality" was observed, however.  *Id.*

On June 30, 2020, plaintiff was evaluated by Dr. Carls.  *Id.* at 6-7.  He noted that plaintiff had surgery on February 26, 2016. *Id.* at 6. Plaintiff reported to Dr. Carls that he suffered pain of ten on a ten point scale, at its worst, and that it radiated down his arm and into his neck. *Id.* He also stated that Pevia could not be handcuffed behind his back due to the pain that it caused.  Dr. Carls noted that the x-rays showed joint space narrowing/marginal osteophytes and severe osteoarthritis.  *Id.* Dr. Carls determined that plaintiff suffered from osteoarthritis of the left shoulder, and he recommended surgical intervention of total shoulder arthroplasty and front cuffing only. *Id.* at 7[7]; *see also* ECF 30-2, ¶ 16; ECF 30-5, ¶ 10.

On July 20, 2020, Hoover submitted a consultation request for shoulder surgery for plaintiff, as recommended by Dr. Carls. ECF 32-8 at 26-27; ECF 32-12 at 20-23. The following day, Dr. Dorsey, the UM provider, returned an ATP finding that said: "Based on the information provided, medical necessity not demonstrated at this time. Significant osteoarthritis is not noted on x-ray report. Consider oral analgesic and physical therapy."  ECF 32-12 at 20.

Dr. Dorsey explains that the request for the orthopedic surgery was only accompanied by the orthopedist's note of June 30, 2020, and a copy of the radiology report of June 15, 2020.  ECF

---

[7] The name of the precise surgery is difficult to decipher because of the poor quality of the copy of the record.  But, the name is found elsewhere in the record.

30-5, ¶ 7. As Dr. Dorsey read it, the radiology report noted only mild deformity. *Id.* The "current medication" section of Dr. Carls's note was blank, and Dr. Dorsey explains that she therefore believed that no conservative measures had been tried, such as anti-inflammatory pain medication. ECF 30-5, ¶ 8. There was also no indication that physical therapy or other conservative therapy had been attempted. *Id.*

Accordingly, Dr. Dorsey explains that she went back into the CARES system and reviewed the March 30, 2020 request for consultation (ECF 30-6 at 6-7), which noted that plaintiff was able to complete all activities of daily living and play basketball, and also documented that "patient agrees he is able to complete all aforementioned tasks but reports, 'I have a court order.'" *Id.* As previously noted, that request was initially denied as not medically indicated but later overturned due to the court order.  ECF 30-5 at 4, ¶ 9. Further, Dr. Dorsey explains that the March 30, 2020 referral did not note any trials of conservative therapies and she believes such alternatives should be tried before surgery, as surgeries are not risk free. *Id.* ¶ 10. Additionally, Dr. Dorsey explains that plaintiff's ability to exercise weighed against the need for surgery; she looks to whether the patient can complete activities of daily living, and plaintiff indicated that he could do so. *Id.*

Hoover again evaluated plaintiff on August 4, 2020. ECF 32-8 at 30-31; ECF 32-9 at 1. She advised plaintiff that an ATP was received for onsite management of his shoulder pain. Plaintiff was dissatisfied with that information and Hoover referred him to Dr. Getachew for further discussion. ECF 32-8 at 30. Hoover noted that plaintiff was to be front cuffed per the court order but also noted that, in her view, there was no clinical indication for such cuffing. *Id.*

Hoover also noted that plaintiff requested an MRI of the head because of his family history for cerebral aneurysms.  *Id.*  A consultation "was placed" and an ATP was "received."  *Id.*  She also requested that plaintiff be scheduled to meet with Dr. Getachew to discuss the ATP. *Id.*

Plaintiff was scheduled to see Dr. Getachew on November 16, 2020, but the visit was cancelled due to limitations on inmate movement caused by a COVID-19 outbreak at NBCI. ECF 30-2 at 7, ¶ 19; ECF 32-9 at 10. Dr. Getachew avers that he reviewed plaintiff's chart, labs, and medication and requested that he be scheduled for an onsite follow up. ECF 30-2 at 7, ¶ 19.

Dr. Getachew avers that he did not deny either the consultation request for shoulder surgery or the brain scan. ECF 30-2 at 7, ¶ 20. But, he states that he agrees with the rationale for disapproval and states that, in his view, plaintiff "continues to receive appropriate medical care of his issues." *Id.*

For their part, the Correctional Defendants argue that the Complaint should be dismissed against them because plaintiff's claim is based solely on the theory of supervisory liability. ECF 34-1 at 6.

### D. Plaintiff's Opposition

Pevia has filed several responses in opposition to the motions. The pleadings raise several matters that Pevia contends prohibit the granting of summary judgment in favor of the defendants. In his opposition, plaintiff notes that he has suffered from shoulder issues since 2012 and that prior diagnostic testing showed degenerative joint disease, osteoarthritis, and cartilage thinning. ECF 37-1 at 1-9; ECF 37-1 at 7-11; ECF 37-2. He provides copies of medical records documenting arthritic changes of the glenohumeral joint, cartilaginous thinning, and loss of joint margins with prominent arthritic changes. *Id.* Further, he notes that Dr. Carls, the orthopedic surgeon, had treated him for many years for his orthopedic issues and was the surgeon who previously operated on his shoulder.

Plaintiff also explains that he filed an administrative remedy request in January 2021, noting that he had signed a settlement agreement regarding his chronic shoulder pain. ECF 37-1

at 10. It provided that he would be seen by an orthopedic surgeon and that as a result of that consultation joint replacement was recommended but medical providers had denied the recommendation.

Additionally, plaintiff denies that Dr. Getachew or Hoover ever told him he needed to resubmit the letter from the neurologist regarding the brain scan.  ECF 37-6 at 7. He states that if he had been told he needed to resubmit the letter he would have done so. *Id*.

## II.      Standards of Review

### A.

Defendants move to dismiss or, in the alternative, for summary judgment.  I will consider the claims against the Correctional Defendants in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  And, I will consider the claims against the Medical Defendants under Fed. R. Civ. P. 56.

Pevia is self-represented.  Therefore, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  However, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).  Moreover, courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't*

*of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).

### B.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Nadendla*, 24 F.4th at 304-05; *Weil*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d

321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).  Simply put, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, ___ Fed. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted); *see also Ashcroft v.*

15

*Iqbal*, 556 U.S. 662, 684 (2009); *Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his

principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167; *see United States of America English Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, 2021 WL 316267, at *2 (4th Cir. July 27, 2021) (per curiam). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the

contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

In addition, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goines*, 822 F.3d at 166; *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines,* 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Further, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed.

R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

## C.

The motion of the Medical Defendants is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 30; ECF 34. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109

F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  But, this discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the

motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment

ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Harrods*, 302 F.3d at 244 (internal citations omitted).  Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Pevia sought and was granted discovery, in that the Medical Defendants were directed to provide him with a copy of his medical record, which they have done.  ECF 25,  ECF 29. Plaintiff has not sought additional discovery, nor has he filed an affidavit under Rule 56(d).

As to the Medical Defendants' Motion, I am satisfied that it is appropriate to address it as one for summary judgment, because this will facilitate resolution of the case.

### D.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The Supreme Court has clarified that, under Rule 56(a), not every factual dispute will defeat a summary judgment motion.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, to avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 525 (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Indeed, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla

of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

Summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). In other words, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Notably, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City*

*State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

25

There is no respondeat superior liability under § 1983. *Iqbal,* 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Section 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Liability of a supervisory official under § 1983 attaches only upon personal participation of the official in the constitutional violation. Such liability "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Under § 1983, supervisory liability must be predicated on facts that, if proven, establish evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

## IV.   Discussion

### A.  Correctional Defendants

### 1.  Eleventh Amendment Immunity

Under the Eleventh Amendment to the Constitution, a state, its agencies, and departments are immune from suits in federal court, absent state consent or Congressional action.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Id*. (citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981)) (per curiam). Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code, State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit of this kind in federal court.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 100 (emphasis in original).

Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity.  This is because a suit against a state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Accordingly, the Correctional Defendants are immune from suit for actions taken in their official capacity.

### 2.  Respondeat Superior

Pevia does not allege facts reflecting that the Correctional Defendants had personal involvement in his case.  Rather, he brings this action against the Correctional Defendants because of their positions within NBCI and the Division of Correction.

As noted, in *Shaw,* 13 F.3d at 799, the Fourth Circuit articulated that supervisory liability requires that a defendant: (1) had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the allege offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury.

Pevia contends that Commissioner Hill and Warden Roderick are liable because the medical providers allegedly violated a settlement agreement between the State and Pevia that required him to be handcuffed in front and be evaluated by an orthopedic specialist, whose recommendation would be followed.  However, plaintiff has failed to allege any facts to show that Hill and Roderick were aware generally of the settlement agreement or, even if they were aware of the agreement, that they were also aware of Pevia's medical concerns or his claim that others were impeding compliance with the agreement.

In sum, plaintiff has failed to state a claim against the Correctional Defendants.  They are entitled to dismissal of the suit against them.[8]

### 3.   Medical Claims

#### a.   The Standard

Construing the allegations in plaintiff's favor, as I must, the Court cannot determine on summary judgment whether Medical Defendants Getachew, Hoover, and Dorsey interfered with prescribed medical treatment by failing to ensure that plaintiff was handcuffed in front, in compliance with medical orders and the settlement agreement reached in connection with prior litigation.  Nor can the Court determine whether they interfered with prescribed medical treatment regarding shoulder

---

[8]     In light of the foregoing, the Court need not address the Correctional Defendants' additional defenses.

replacement surgery and/or failed to insure that plaintiff received necessary diagnostic testing for a suspected aneurysm.  In contrast, there is no basis for a claim against Dr. Bartels.  He is entitled to summary judgment.

Plaintiff's claims regarding the denial of adequate medical care are governed by the Eighth Amendment to the Constitution, which prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates."  *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).  In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failure to protect inmates from attack, inhumane conditions of confinement, and failure to render medical assistance.  *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Hixson v. Moran*, 1 F. 4th 297, 302 (4th Cir. 2021); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety."  *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017).

Of relevance here, in order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to

deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008).  "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'"  *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).  The Fourth Circuit has characterized the applicable standard as an "exacting" one.  *Lightsey*, 775 F.3d at 178.

An Eighth Amendment claim for deliberate indifference to serious medical needs "includes objective and subjective elements." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was provided.  *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Hixson*, 1 F. 4th at 302; *Schilling*, 937 F.3d at 357; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King v. Rubenstein*, 825 F.3d 206, 219 (4th Cir. 2016).

Proof of an objectively serious medical condition, however, does not end the inquiry.  As the Court explained in *Heyer*, 849 F.3d at 209-10: "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry."

In the context of a claim concerning allegedly inadequate medical care, the subjective

component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."); *see Mays*, 992 F.3d at 300.

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Put another way, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). Notably, "[t]he necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering*

31

with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

In other words, "[d]eliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Formica*, 739 F. App'x at 754; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments.").

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge,

including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105.

But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012). And, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct. 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*,

511 U.S. at 844.  And, reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury.  Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'"  *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98.  But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury."  *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

### b.  Risk of brain aneurysm

Pevia reports a serious family history of brain aneurysms and claims his family doctor recommended imaging to rule out that he has the condition.  He also asserts that he suffers from headaches and pain behind his eye.  And, he claims this may be a symptom of an aneurysm, given his family history. ECF 37 at 11.

Hoover and Dr. Getachew do not appear to dispute that the suspicion of brain aneurysm is a serious medical issue.  But, the Medical Defendants note that the claim is "speculative" as to plaintiff, because he does not in fact know whether he suffers from the condition.  However, plaintiff has not been provided with requested diagnostic testing.  Nor have defendants introduced expert testimony to refute plaintiff's claim that diagnostic testing is warranted.  To the contrary, Dr. Getachew and Hoover seemingly agree that plaintiff's family history is of concern and that the diagnostic testing may be warranted.

It also remains in dispute as to whether plaintiff ever provided the letter from his doctor to medical staff, and whether plaintiff was ever advised that he needed to resubmit the letter in order for the request to be properly evaluated.  The Medical Defendants seems to acknowledge that plaintiff gave the letter to Nurse Opel, who is not a defendant in this case.  However, plaintiff also claims that he provided the letter to Hoover, who is a party to these proceedings. The Medical Defendants offer no explanation as to what happened to the letter after plaintiff provided it to Opel. Further, Dr. Getachew and Hoover each aver that if plaintiff provides the letter another request will be submitted to the UM team for approval.  ECF 30-2, ¶ 9; ECF 30-4, ¶ 5.

Pevia contends that he was never advised that he needed to resubmit the letter.  And, the medical records only state that Getachew requested plaintiff be scheduled for a visit so that he could be told to resubmit the letter. There is no evidence before the court that such a visit or advisement ever occurred. Nor is there any discussion in the record for other means to access the letter, such as asking Pevia to sign a release of information so that medical providers could obtain a copy of the letter and/or consult them with the neurosurgeon.

Given the posture of the case and the record before the court, I cannot conclude that this case merely involves a difference of opinion as to medical necessity.  No expert information has been provided that would enable the Court to determine whether the parties simply disagree on appropriate medical care.  Nor can I resolve the dispute as to whether plaintiff gave the letter to defendants Getachew and Hoover, as he claims.

In sum, I cannot determine whether defendants deliberately disregarded the need for further diagnostic testing. *See Anderson*, 477 U.S. at 255 ("Credibility determinations . . . are jury functions, not those of a judge . . . ."). Therefore, this claim may proceed as to defendants Getachew and Hoover.

### c.   Front cuffing order

As to plaintiff's front cuffing order, the medical records demonstrate that Hoover reportedly believed there was no medical necessity for front cuffing. She justifies this determination based on her assessment of plaintiff's ability to complete activities of daily living and engage in exercise. But, she did not address plaintiff's long history of shoulder injuries, the settlement agreement requiring front cuffing unless an orthopedic surgeon deems it unnecessary, and the finding of orthopedic surgeon Dr. Carls that plaintiff required both front cuffing and shoulder surgery.

It is unclear from the record before the court whether Hoover was aware of the basis for the front cuffing order. She wrote in her note that plaintiff was able to perform all activities of daily living and participate in apparently vigorous exercise, but there is no indication as to whether those activities caused pain, whether Pevia was able to do those activities when the cuffing order was originally placed, or her knowledge regarding plaintiff's health. Similarly, there is no indication in the medical record that Hoover reviewed plaintiff's medical history or independently assessed plaintiff's range of motion or pain level.

Plaintiff notes that his medical records demonstrate he suffered from shoulder pain for years, including having undergone shoulder compression surgery with Dr. Carls. His front cuffing order was a result of the ongoing issues he suffered. ECF 37. Hoover's notation that plaintiff simply stated he had a court order ignores plaintiff's extensive and well documented history of shoulder problems. Moreover, Hoover's determination that there was no clinical indication for front cuffing is contradicted by Dr. Carls's finding. In fact, after Hoover directed the recission of the front cuffing order, plaintiff was cuffed from behind, which he reports resulted in a tearing

sensation and pain in the shoulder. As a result, plaintiff's front cuffing order was immediately reinstated.

Based on the record, I cannot resolve the question of whether Hoover deliberately disregarded the settlement agreement, prior medical orders, or plaintiff's medical history. The claim shall proceed as to Hoover.

### d. Shoulder replacement

Plaintiff's claim as to shoulder replacement implicates conduct of Hoover as well as Dr. Dorsey and Dr. Getachew.   Plaintiff has presented sufficient information to demonstrate that material facts remain disputed.

Throughout 2011-2017, plaintiff was treated for chronic shoulder pain which included, among other things, diagnosis of arthritis and degenerative changes and surgery. ECF 37-1; ECF 37-2; ECF 37-3.  Dr. Carls again recommended  shoulder surgery after examining plaintiff and reviewing his x-rays and, presumably, based upon his prior treatment of plaintiff. Nevertheless, the UMMD physician, Dr. Dorsey, overrode that recommendation without reviewing plaintiff's complete and extensive medical records regarding his injury.  For example, an MRI taken in 2015 found "arthritic changes of the glenohumeral joint, where there is cartilaginous thinning and/or loss and joint margin osteophytes." ECF 37-1 at 11. The report noted "prominent arthritic change at the glenohumeral joint."

Questions remain as to the policy and procedure for reviewing consultation requests where lower level providers apparently fail to submit records that would aid the reviewing physician and also as to the reviewing physician's obligations to obtain additional documentation.  Although Dr. Dorsey notes that she did not have plaintiff's complete medical record and that his most recent x-

ray did not reflect severe osteoarthritis, as Dr. Carls indicated, there is no indication as to whether Dr. Dorsey or Dr. Carls actually viewed the x-ray or simply relied on the radiology report.

Dr. Dorsey also notes that Dr. Carls's report did not indicate that plaintiff was on any medication or whether he had tried physical therapy.  She relies on the fact that she was not provided with Pevia's entire record. But, the Medical Defendants fail to address why neither Hoover nor Getachew provided a more complete record of plaintiff's shoulder injury to the utilization review team or why utilization failed to request additional documentation. Questions remain as to why the orthopedic surgeon, who treated plaintiff for many years, would recommend surgery and other physicians would believe that to be medically unnecessary.

On this record, I cannot conclude that the issue involves a mere difference in medical opinion.  I cannot resolve the questions of whether Medical Defendants Getachew, Hoover, and Dorsey deliberately disregarded plaintiff's medical history and/or deliberately failed to provide or review appropriate information at the utilization review level.

Plaintiff's claims regarding the denial of shoulder surgery may proceed as to Medical Defendants Getachew, Hoover, and Dorsey.

### e.   Orthopedic consultation

On March 30, 2020, Dr. Bartels denied Hoover's request that plaintiff be referred for an orthopedic evaluation. Dr. Bartels has never met or examined plaintiff and this is his only involvement in plaintiff's medical care. After the denial of the request, Hoover and Getachew responded by advising utilization review that the consultation was required per court order.  Less than one month after the denial of March 30, 2020, Dr. Bartels was overridden and the consultation was scheduled.

There is no other evidence before the Court as to Dr. Bartels's conduct. His denial of the consultation request on the limited information provided to him by Hoover was not, as a matter of law, conduct of deliberate indifference to plaintiff's serious medical need. Therefore, Dr. Bartels is entitled to summary judgment.

## V.      Conclusion

For the foregoing reasons, I will grant the Correctional Defendants' Motion and grant in part and deny in part the Medical Defendants' Motion. Judgment is entered in favor or Dr. Bartels. Summary judgment is denied as to Defendants Getachew, Hoover, and Dorsey.

Counsel will be appointed to represent Mr. Pevia.

A separate Order follows.


September 2, 2022                                      /s/
Date                                     Ellen L. Hollander
                                         United States District Judge

39